IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

DOUGLAS T. DAVIS,                                          Case No. 1:10-cv-01452-CL

        Plaintiff,

    v.                                                                                 FINDINGS AND
                                                                              RECOMMENDATION

MICHAEL J. ASTRUE,
Commissioner of Social Security,

        Defendant.

CLARKE, Magistrate Judge:

      Douglas Davis ("plaintiff") brings this action pursuant to the Social Security Act (the "Act"), 42 U.S.C. §§ 405(g), 1383(c), to obtain judicial review of a final decision of the Commissioner of Social Security (the "Commissioner"). The Commissioner denied plaintiff's applications for Title II disability insurance benefits ("DIB") and Title XVI supplemental security income ("SSI") under the Act. For the reasons set forth below, the Commissioner's decision should be AFFIRMED and this case should be DISMISSED.

Page 1 - FINDINGS AND RECOMMENDATION

## PROCEDURAL BACKGROUND

On October 18, 2006, plaintiff protectively filed applications for DIB and SSI. Tr. 9, 153-61. After the applications were denied initially and upon reconsideration, plaintiff timely requested a hearing before an administrative law judge ("ALJ"). Tr. 104. On October 13, 2009, an ALJ hearing was held before the Honorable Riley J. Atkins, at which plaintiff testified and was represented by counsel; a vocational expert ("VE") also testified. Tr. 27-76. On November 17, 2009, ALJ Atkins issued a decision finding plaintiff not disabled within the meaning of the Act. Tr. 6-20. After the Appeals Council declined review of the ALJ's decision, plaintiff filed a complaint in this Court. Tr. 1-3.

## FACTUAL BACKGROUND

Born on April 27, 1962, plaintiff was 41 years old on the alleged onset date of disability and 47 years old at the time of the hearing. Tr. 19, 153. He graduated from high school and attended four or more years of college, but did not obtain a degree. Tr. 19, 207. Plaintiff has past relevant work experience as a professional land surveyor; he also owned his own surveying company. Tr. 18-19, 219-26. Plaintiff alleges disability beginning December 31, 2003 due to depression, general anxiety disorder, obsessive-compulsive disorder, and attention deficit hypertension disorder ("ADHD"). Tr. 153, 158, 199.

## STANDARD OF REVIEW

The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v.*

Page 2 - FINDINGS AND RECOMMENDATION

*Perales*, 402 U.S. 389, 401 (1971) (citing *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). "Where the evidence as a whole can support either a grant or a denial, [a court] may not substitute [its] judgment for the ALJ's." *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) (citation omitted).

The initial burden of proof rests upon the claimant to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step sequential process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920. First, the Commissioner determines whether a claimant is engaged in "substantial gainful activity"; if so, the claimant is not disabled. *Yuckert*, 482 U.S. at 140; 20 C.F.R. §§ 404.1520(b), 416.920(b).

At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140-41; 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled. *Yuckert*, 482 U.S. at 141.

At step three, the Commissioner determines whether the impairment meets or equals "one of a number of listed impairments that . . . are so severe as to preclude substantial gainful activity." *Id.*; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

Page 3 - FINDINGS AND RECOMMENDATION

At step four, the Commissioner determines whether the claimant can still perform "past relevant work." *Yuckert*, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can work, he is not disabled; if he cannot his perform past relevant work, the burden shifts to the Commissioner. *Yuckert*, 482 U.S. at 141. At step five, the Commissioner must establish that the claimant can perform other work that exists in significant numbers in the national economy. *Id.* at 142; 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f). If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## DISCUSSION

I. The ALJ's Findings

At step one of the sequential evaluation process outlined above, the ALJ found that plaintiff had engaged in substantial gainful activity from the alleged onset date through October 2008, but not thereafter. Tr. 11-13, Findings 2-4. At step two, the ALJ determined that plaintiff had the following severe impairments: depression, generalized anxiety disorder, and ADHD. Tr. 13, Finding 5. At step three, the ALJ found that plaintiff's impairments, either singly or in combination, did not meet or equal the requirements of a listed impairment. Tr. 14, Finding 6.

As such, the ALJ continued the evaluation process in order to determine how plaintiff's medical impairments affected his ability to work. The ALJ resolved that plaintiff had the residual functional capacity ("RFC") to perform medium exertion work, with the following restrictions: no concentrated exposure to hazardous conditions; only simple, routine, repetitive tasks; and occasional contact with the general public. Tr. 15, Finding 7.

At step four, the ALJ concluded that plaintiff was unable to perform his past relevant work. Tr. 18, Finding 8. Finally, at step five, the ALJ found that there are jobs that exist in significant

Page 4 - FINDINGS AND RECOMMENDATION

numbers in the national and local economies that plaintiff could perform despite his limitations, such as sweeper, warehouse worker, and hand packager. Tr. 19, Finding 12. Based on these findings, the ALJ determined that plaintiff was not disabled within the meaning of the Act. Tr. 20.

II. Plaintiff's Allegations of Error

Plaintiff argues that the ALJ erred by: 1) improperly discrediting the lay testimony; 2) finding that he engaged in substantial gainful activity between January 2004 and October 2008 at step one; 3) not determining that his back condition was severe at step two; and 4) failing to include all of his limitations in the hypothetical questions posed to the VE at step five. *See* Pl.'s Opening Br. 1-2.

A. Lay Testimony

Plaintiff asserts that the ALJ failed to provide legally sufficient reasons to reject the third-party statements of Robert Hawes, Karen Kenyon, Linda Ford, Steve Wagner, Jeff Whittaker, and Ralph Wilfs. *Id.* at 5-8. Lay testimony regarding a claimant's symptoms or how an impairment affects the ability to work is competent evidence that an ALJ must take into account. *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012) (citations omitted). The ALJ must provide reasons germane to each witness in order to discount competent lay testimony. *Id.*; *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001) (citation omitted). However, in rejecting lay testimony, the ALJ need not "discuss every witness's testimony on a individualized, witness-by-witness basis. Rather, if the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness." *Molina*, 674 F.3d at 1114; *accord Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009) (rejecting lay testimony on same basis as claimant's discredited subjective reports); *see also Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005) (lay testimony may be rejected where it is inconsistent with the

Page 5 - FINDINGS AND RECOMMENDATION

claimant's daily activities or the objective medical evidence).

Here, plaintiff's friends and former co-workers offered written testimony regarding his alleged impairments. Tr. 242-55, 309-19. These written statements generally observe that plaintiff became depressed after a series of unfortunate life events, including the failure of his business, bankruptcy, and divorce. *Id.* Mr. Whittaker's letter described plaintiff's physical limitations, which consist of difficulty lifting heavier objects and fatigue. Tr. 314. Mr. Wirfs did not discuss plaintiff's allegedly disabling impairments other than to note that plaintiff "agonizes over choices which would be routine for most people." Tr. 315.

Ms. Ford completed a Third-Party Adult Function Report in 2007 and wrote a letter in August 2009. Tr. 242-51, 316. The Third-Party Adult Function Report describes few physical functional limitations, but notes that plaintiff is "easily distracted" and has "trouble prioritizing [and with] concentration and memory." Tr. 242, 246-47. Ms. Ford's letter describes an individual who was severely depressed in 2006, but is "doing a little better [in 2009]." Tr. 316. She nonetheless noted that plaintiff's "depression paralyzes his ability to think clearly or function on his own." *Id.*

Ms. Kenyon also completed an Third-Party Adult Function Report in 2007. Tr. 252-55. Ms. Kenyon's statements are similar to those of Ms. Ford; she primarily describes a physically functional individual who is depressed and has problems with concentration and memory. *Id.* Ms. Kenyon also submitted a letter in preparation of plaintiff's ALJ hearing in August 2009. Tr. 309-10. In it, she stated that plaintiff was distracted and "has a great deal of trouble getting tasks done." *Id.* at 309. In addition, she reported that plaintiff hyper-focused on insignificant details and, as a result, lost track of time. *Id.* at 310.

Mr. Hawes wrote a letter in September 2009, in which he noted that plaintiff "seemed

socially impaired at times, exhibited frequent derailment or incoherence when speaking, had extremely poor concentration, and seemed depressed and anxious." Tr. 317. He also reported that plaintiff was re-hired at OTAK, where Mr. Hawes worked, as a surveyor while exhibiting these traits. *Id.* At work, Mr. Hawes observed that "[m]entally, [plainitff] did not seem to be there. Many times he was hours late for work, and frequently did not come to work at all." *Id.* After he was fired from OTAK in October 2008, Mr. Hawes lost touch with plaintiff until receiving his request to write a letter on behalf of his applications for DIB and SSI. *Id.* at 318.

Finally, Mr. Wagner wrote a letter in October 2009. Tr. 319. Mr. Wagner's letter describes an individual who, because of his depression, has trouble focusing and, as a result, takes longer to complete tasks. *Id.* ("[i]t took us hours and hours to accomplish his bookkeeping because he was so unsure of himself").

In sum, the third-party testimony characterizes an individual who has few physical limitations, but who has problems with concentration, memory, and perspective. As such, the lay statements were substantively identical to plaintiff's testimony. *Compare* Tr. 242-55, 309-19 (lay testimony), *with* Tr.34-72, 232-39 (plaintiff's testimony).

As the ALJ noted, plaintiff was performing extensive daily activities during the time period testified to by the third-party witnesses, including operating his own business, working at OTAK, looking for a new job within his field which required "expending great effort on finding leads and preparing cover letters and resumes," "making phone calls and using a computer for up to six hours at a time," manual labor for "three to four hours at a time," traveling, personal maintenance, household chores, and shopping both in-stores and on-line. Tr. 17.

The ALJ concluded that these activities "consumed a substantial part of [plaintiff's] day" and

Page 7 - FINDINGS AND RECOMMENDATION

undermined his subjective symptoms statements. *Id.* Accordingly, the ALJ determined that plaintiff was not credible, in part, because his testimony was inconsistent with his activities of daily living and with the objective medical evidence. Tr. 16-17. Plaintiff does not now challenge his credibility finding. *See generally* Pl.'s Opening Br.

The ALJ rejected the third-party statements for the same reasons that he discredited plaintiff's testimony; specifically, the ALJ found that the lay testimony was not credible because it was inconsistent "with other substantial evidence in the case record," including plaintiff's reported activities and the medical record.[1] Tr. 17. Because the ALJ provided clear and convincing reasons to reject plaintiff's testimony, it follows that the ALJ did not err in discrediting the lay testimony.[2] *See Valentine*, 574 F.3d at 694; *Molina*, 674 F.3d at 1114. Therefore, the ALJ's finding in regard to the lay testimony should be affirmed.

B. Substantial Gainful Activity

Plaintiff next alleges that he did not engage in substantial gainful activity from the alleged onset date through October 2008; as such, he argues the ALJ's finding to the contrary constitutes

---

[1] The ALJ also discredited the lay testimony because it could not be "objectively verified with any reasonable degree of certainty." Tr. 17. As plaintiff correctly notes, this is a legally inadequate reason to reject third-party statements. Because, however, the ALJ provided two additional reasons that are legally sufficient, such an error was harmless. *See Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006) (mistakes that are "nonprejudicial to the claimant [and] irrelevant to the ALJ's ultimate disability conclusion" are harmless); *see also Molina*, 674 F.3d at 1114.

[2] Plaintiff attempts to rephrase the issue presented so that it falls outside of the Ninth Circuit's well-settled precedent regarding lay testimony; namely, he asserts that the ALJ did not discredited the lay testimony due to contradictions, but rather because the ALJ "th[ought] the evidence shows plaintiff can work so [the ALJ would] not consider evidence that shows he can't." Pl.'s Opening Br. 8. Plaintiff's argument is unpersuasive, as the record clearly demonstrates that the ALJ discredited the third-party statements due to inconsistencies.

legal error. Pl.'s Opening Br. 5-6. Specifically, plaintiff contends that he was participating in a "sheltered workshop" because he was allowed to come into work late and or miss work on a regular basis due to his past association with OTAK. *Id.* at 6 (citing 20 C.F.R. § 404.1573(b), (c)).

At step one, the ALJ determines whether the claimant can engage in substantial gainful activity. 20 C.F.R. §§ 404.1571, 416.971. Substantial gainful activity is work that is performed for pay or profit and that involves significant physical or mental activities. 20 C.F.R. §§ 404.1510, 404.1572, 416.910, 416.972. Earnings that exceed a certain amount, as specified in the regulations, create the presumption of substantial gainful activity. 20 C.F.R. §§ 404.1574, 404.1575(c); *see also Keyes v. Sullivan*, 894 F.2d 1053, 1056 (9th Cir.1990); *Lewis*, 236 F.3d at 515-16. The claimant may rebut this presumption with evidence of his inability to perform the job well, without special assistance, or for only brief periods of time. *Keyes*, 894 F.2d at 1056; *see also* 20 C.F.R. § 404.1573.

It is undisputed that plaintiff received compensation in excess of the statutory minimum from January 2004 through October 2008.[3] Pl.'s Opening Br. 5-6; *see also* Pl.'s Reply Br. 2-4. Further, it is undisputed that plaintiff was not receiving special accommodations while he was operating, and subsequently winding down, his own business from 2004 through 2006. *Id.* Thus, the issue is whether plaintiff successfully rebutted the presumption that he was performing substantial gainful activity, by demonstrating that he was participating in a sheltered workshop, while employed at OTAK from October 2007 through October 2008.

---

[3] While plaintiff did not produce any tax records for 2006 through early 2007, the ALJ found that "circumstantial evidence" indicated that he was performing substantial gainful activity during this time. Tr. 11. Plaintiff does not challenge this finding. *See generally* Pl.'s Opening Br.

Page 9 - FINDINGS AND RECOMMENDATION

> The regulation governing sheltered workshops states
>
> The work that you are doing may be done under special conditions that take into account your impairment, such as work done in a sheltered workshop or as a patient in a hospital. If your work is done under special conditions, we may find that it does not show that you have the ability to do substantial gainful activity . . . However, work done under special conditions may show that you have the necessary skills and ability to work at the substantial gainful activity level. Examples of the special conditions that may relate to your impairment include, but are not limited to, situations in which - (1) You required and received special assistance from other employees in performing your work; (2) You were allowed to work irregular hours or take frequent rest periods; (3) You were provided with special equipment or were assigned work especially suited to your impairment; (4) You were able to work only because of specially arranged circumstances, for example, other persons helped you prepare for or get to and from your work; (5) You were permitted to work at a lower standard of productivity or efficiency than other employees; or (6) You were given the opportunity to work despite your impairment because of family relationship, past association with your employer, or your employer's concern for your welfare.

20 C.F.R. § 404.1573(c).

Here, plaintiff cites to a single piece of evidence, the lay testimony of Mr. Hawes, to support his contention that he was engaged in a sheltered workshop. Pl.'s Opening Br. 6. As discussed above, Mr. Hawes reported that "[m]any times [plaintiff] was late for work, and frequently did not come to work at all." *Id.*; Tr. 317. However, Mr. Hawes' statement relates to only a small part of plaintiff's overall work activities. More importantly, the ALJ properly discredited Mr. Hawes' testimony.

Regardless, even crediting Mr. Hawes' statement as true, plaintiff failed to establish that he was participating in a sheltered workshop. Plaintiff testified at the hearing that he "was performing skilled, professional-type services" at OTAK and "did not [receive] any extra help, other than getting advice from other workers." Tr. 12, 49. Plaintiff also stated that when he was re-hired in 2007, OTAK was not initially aware of any psychological issues. Tr. 12, 46. The ALJ concluded that "even though [plaintiff] was allowed to continue for a period of time despite doing a poor job before

Page 10 - FINDINGS AND RECOMMENDATION

being laid off, [he] fail[ed] to prove that he was working 'under special conditions that take into account his impairment." Tr. 12.

The ALJ is correct. First, a single statement from one lay witness does not constitute substantial evidence. Second, plaintiff's testimony establishes that OTAK was not even aware of his alleged psychological impairments and, as such, did not provide any special assistance or accommodations for the highly skilled work he was performing. Accordingly, the fact that plaintiff was frequently late to or missed work does not demonstrate the existence of a sheltered workshop, especially since plaintiff was held to the same performance standards as other professionals in his field. Thus, substantial evidence supports the ALJ's conclusion that plaintiff was performing substantial gainful activity while employed at OTAK. While plaintiff is correct that the record may beget a more favorable interpretation, because the ALJ's decision is reasonable, it should nonetheless be upheld. *See, e.g., Burch v. Barnhart*, 400 F.3d 676, 680-81 (9th Cir. 2005). Therefore, the ALJ's determination regarding substantial gainful activity should be affirmed.

C. Alleged Back Impairment

Plaintiff asserts that the ALJ failed to include his back condition as a severe impairment at step two. Pl.'s Opening Br. 8. At step two, the ALJ determines whether the claimant has a medically determinable severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520; 416.920. An impairment is "not severe" if it does not significantly limit the plaintiff's ability to do basic work activities. 20 C.F.R. §§ 404.1521(a); 416.921(a); *see also Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005). The step two threshold is low; the Ninth Circuit describes it as a "de minimus screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). However, "[o]missions at step two are harmless if the ALJ's subsequent evaluation

considered the effect of the impairment omitted at step two." *Harrison v. Astrue*, 2011 WL 2619504, *7 (D.Or. July 1, 2011) (citing *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007)).

Here, the medical record contains reference to a possible back impairment; however, there is no evidence that this condition significantly limited plaintiff's ability to perform basic work activities. Plaintiff has extensive medical records extending back to 2002. Tr. 381. Nevertheless, plaintiff did not report any back pain until January 2007.[4] Tr. 228. As such, Dr. John Tongue, M.D., performed MRIs of the lumbar and thoracic spine. Tr. 425-28. These tests revealed "moderate canal stenosis at L3-4" and "small disc bulge[s] at L3-4 [and] L4-5," but were otherwise unremarkable. Tr. 426-27.

Six months later, plaintiff disavowed any pain in his back. Tr. 514. In addition, upon examination, plaintiff exhibited a full range of motion in his back and hips, a normal gait, normal posture, and "no difficulty getting on or off the exam table." *Id.* In fact, plaintiff did not report any back pain symptoms again for over two years. Tr. 628 (plaintiff "denie[d] any lumbar pain" in July 2009); *but see* Tr. 625 (reporting back pain on August 25, 2009). There are no records addressing plaintiff's back condition after August 2009.

In his opinion, the ALJ expressly discussed plaintiff's MRIs and other diagnostic studies and concluded that plaintiff's back impairment "do[es] not cause more than minimal limitation in [his]

---

[4] Plaintiff did report pain in both hips beginning in 2002. Tr. 381. As a result, plaintiff underwent diagnostic testing, which revealed "early symmetrical degenerative change" in both hips; this change, however, showed only normal "wear and tear" due to age and was "not severe enough to [warrant] surgery." Tr. 655, 480 (summarizing physical medical evidence). Plaintiff does not allege that his hip pain is related to or arising out of his back condition. Pl.'s Opening Br. 8-10. In addition, plaintiff does not contend that the ALJ should have determined that his hip impairment was severe at step two. *Id.* The Court therefore construes these as discreet impairments and, accordingly, will not further discuss plaintiff's hip condition.

Page 12 - FINDINGS AND RECOMMENDATION

ability to perform basic work activities and are not severe within the ambit of the Regulations." Tr. 13. Ample evidence supports the ALJ's determination.

First, two consulting doctors opined that plaintiff did not have any medically severe physical impairments. On March 21, 2007, Dr. Sharon Eder, M.D., reviewed plaintiff's medical records. Tr. 456. Dr. Eder noted that plaintiff "has some osteopenia in the back, but does not [complain of] back pain." *Id.* Dr. Eder also remarked that plaintiff was capable of "maintain[ing] labor for 3-4 [hours at a time]" and "doing his physical [activities of daily living]." *Id.* Accordingly, Dr. Eder opined that plaintiff "does not have severe physical limitations." *Id.* On October 2, 2007, Dr. Richard Alley, M.D., performed a second consultive examination. Tr. 480. Dr. Alley explicitly noted plaintiff's January 2007 MRI results, including the "moderate stenosis" and "small [disc] bulges at multiple levels," but similarly concluded that plaintiff did not have any severe physical impairments. *Id.* The ALJ gave full weight to the opinions of Drs. Eder and Alley and plaintiff does not challenge this finding. Tr. 18; *see generally* Br. Opening Br.

Second, there is no evidence that plaintiff's back condition affected his ability to perform basic work activities. Plaintiff does not detail what restrictions flow from this alleged impairment. Pl.'s Opening Br. 8-10; *see also* Pl.'s Reply Br. 7-8. There was no credible evidence before the ALJ, and none in the record, providing that plaintiff's back condition created functional limitations or exacerbated his other alleged impairments. Plaintiff, however, bears the burden of establishing that the alleged error was harmful; further, "[w]here harmfulness of the error is not apparent from the circumstances, the party seeking reversal must explain how the error caused harm.". *McLeod v. Astrue*, 640 F.3d 881, 887 (9th Cir. 2011) (as amended) (citing *Shinseki v. Sanders*, 556 U.S. 396, 410 (2009)). Yet plaintiff wholly neglected to address how the ALJ's error in assessing his alleged

Page 13 - FINDINGS AND RECOMMENDATION